## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**HOWARD CROSBY**,

                              Plaintiff,

     v.                                              Case No. 8:21-CV-02730-TPB-CPT

**LLOYD AUSTIN, III.**, in his official
capacity as Secretary of Defense, *et al.*,

                              Defendants.

## MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss this Action. The grounds for this motion are set forth below.

## MEMORANDUM OF LAW

Nearly one *million* Americans have died from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html. Seeking to protect the force and military mission in the face of one of the worst pandemics in history and the harms that had already occurred to military forces, Secretary of Defense Austin directed the military departments to add the COVID-19 vaccination to the list of those required for Service members to remain fit for military service. The military has long maintained an immunization program to maintain strategic readiness by maintaining and protecting the health of personnel from naturally occurring diseases or pathogens endemic to specific duty or deployment areas.

1

Plaintiff Howard Crosby, a noncommissioned officer in the Army, objects to the military's readiness policy; seeks to have this Court adjudicate, in the first instance, whether he remains medically fit for military service; and seeks an order from this Court that would preclude the Army from even considering a core element of his medical fitness for duty in deciding whether to retain him in the Army. Such relief would be manifestly improper, particularly in the military context where the Supreme Court and this Circuit's precedents have consistently cautioned against judicial interference. As Justice Kavanaugh emphasized in a recent concurrence, "[u]nder Article II of the Constitution, the President of the United States, not any federal judge, is the Commander in Chief of the Armed Forces," and there is no basis to "employ[] the judicial power in a manner that military commanders believe would impair the military of the United States as it defends the American people." *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring) (mem.).

This Court should dismiss this Action. First, Crosby's claims are not ripe. He has already submitted that he is "willing to take the FDA-licensed Comirnaty vaccine," Compl. ¶ 12, but has not utilized any available procedure to request one. There is no need to waste further judicial and party resources on this matter because the Army will provide Crosby with the very vaccine that he is willing to take, eliminating any likelihood that Crosby will experience any consequence for not complying with the military's immunization requirements

And if that were not enough, the Court lacks jurisdiction over this matter because the involuntary discharge Crosby seeks to redress may not occur at all. Even

2

assuming his religious accommodation request might be denied, the Supreme Court has held that judicial interference with an Army administrative discharge proceeding was premature where, as here, the Secretary of the Army had not yet acted on the discharge recommendation and has not decided whether to separate the officer. *Beard v. Stahr*, 370 U.S. 41, 42 (1962). Indeed, in this Circuit, if such a "suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies." *Hodges v. Callway*, 499 F.2d 417, 421 (5th Cir. 1974).[1] Rather, judicial redress of injuries arising from Army personnel actions must await a final decision on a petition for relief from the Army Board for Correction of Military Records ("ABCMR"). *See id.* at 420; *see also Chappell v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review[.]"). Until that time, "the doors of the federal courthouse [are] closed[.]" *Hodges*, 499 F.2d at 420. "While [Crosby] may ultimately have recourse to the courts to protect his constitutional rights, the courts will not interfere with the disciplinary or executive functions of the armed services." *McCurdy v. Zuckert*, 359 F.2d 491, 495 n.6 (5th Cir. 1966). Because there is no sound basis for the Court to continue to entertain this case at this time, the Court should dismiss it. Moreover, Crosby's claims fail as a matter of law.

## BACKGROUND

Defendants presume the Court's familiarity with background facts that have been the subject of prior briefing in this matter, including the COVID-19 pandemic,

---

[1] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the Food and Drug Administration's regulation of and guidance concerning COVID-19 vaccines, and the Department of Defense COVID-19 vaccination directive. *See* ECF No. 15. Defendants add the following additional background.

## I.    Crosby's Noncompliance with Army Immunization Requirements and Informal Requests for a "BLA-Complaint Lot" of a COVID-19 Vaccine

Sergeant Major Howard Crosby is a noncommissioned officer in the U.S. Army Reserve Individual Mobilization Augmentation program and "subject to immediate, involuntary order to active duty by the President or Congress." ECF No. 15-33 ¶¶ 2-3. On October 12, 2021—nearly two months after Secretary Austin directed that the COVID-19 vaccination be included among required vaccinations for military Service members—Crosby's commander counseled him regarding the requirement. *Id.* ¶ 5. Afterward, Crosby stated in writing that he disagreed with the information because, in his view, he was being ordered to take a vaccination that was under an Emergency Use Authorization ("EUA"). *Id*

On August 23, 2021, the FDA approved a Biologics License Application ("BLA") for the Pfizer vaccine, for individuals who are 16 years of age and older. ECF No. 1-4. A BLA is an application for approval to introduce, or deliver for introduction, a biologic product into interstate commerce. 21 C.F.R. § 601.2.[2] Comirnaty"[3] is also available under an EUA for the approved and other uses. At the time of approval, the

---

[2]   *See* FDA, Biologics License Applications BLA Process (CBER) (Jan. 27, 2021), https://www.fda.gov/vaccines-blood-biologics/development-approval-process-cber/biologics-license-applications-bla-process-cber.

[3]   "Comirnaty" is the proprietary name of a COVID-19 vaccine manufactured by Pfizer, Inc. ECF No. 1-3.

FDA worked with Pfizer to identify "BLA-compliant" lots of the vaccine, which are lots of the vaccine that were manufactured in facilities listed in the BLA and that had undergone lot release, but which bore the EUA label. ECF No. 1-4 at 27. The FDA additionally determined that the approved and EUA vaccine could be used interchangeably without presenting any safety or effectiveness concerns. https://www.fda.gov/media/150386/download, at 3 n.15. On January 31, 2022, the FDA approved a second COVID-19 vaccine, Spikevax, manufactured by ModernaTX, Inc. https://www.fda.gov/media/155815/download.

On November 15, 2021, Crosby requested "Comirnaty" from an Army clinic at Fort Sill, Oklahoma. Supp. Declaration of SGM Howard A. Crosby Jr., ECF No. 25-1 at 8-20 ("Crosby Decl.") ¶ 5(f). In requesting the "Comirnaty" vaccine, Crosby provided military clinics "with the lot numbers that were stated as BLA compliant[.]" *Id*. On the same date, Crosby submitted a religious exemption request. ECF No. 15-33 ¶ 6. Two days later, Crosby went to a clinic at MacDill Air Force Base, again asking for "a BLA compliant lot[.]" Crosby Decl. ¶ 5(f). Finally, on January 13, 2022, Crosby once more visited MacDill Air Force Base and "asked for Comirnaty[,]" specifically "ask[ing] for the lot number." *Id*. Although Crosby has requested "a BLA-compliant lot" from military clinics three times, Crosby has never requested such a dose using a formal avenue of military redress. After this Court's preliminary injunction hearing, Defendants informed Crosby that the Army would make one of the doses he has requested available to him if he submits a memorandum to his commander electing to receive one. ECF No. 45 ¶ 2.

## II.     10 U.S.C. § 1107a

10 U.S.C. § 1107a makes no mention of religious or philosophical objections to any medial product. It provides that "[i]n the case of the administration of [an EUA] product . . . to members of the armed forces, the condition described in" the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 360-bbb-3, "designed to ensure that individuals are informed of an option to accept or refuse administration of a product, may be waived only by the President if the President determines, in writing, that complying with such requirement is not in the interests of national security." 10 U.S.C. § 1107a. A comprehensive analysis of the FDCA provision and its cognate provisions, § 1107a, is available in a 2021 Office of Legal Counsel opinion. [4]

## III.    Intraservice Corrective Process

A Soldier who refuses vaccination without an approved exemption may be subject to discipline or adverse administrative action. *See, e.g.*, ECF No. 1-8 ¶¶ 3.D.8.B.1.D, 3.D.8.B.1.E. But no action will be taken against a Soldier with a pending exemption request. *Id.* ¶ 3.D.8.B.1.F. Moreover, non-punitive administrative actions such as letters of reprimand or reports of misconduct also provide opportunity for the Service member to respond, and even to appeal for the correction of their personnel records. Army Regulation ("A.R.") 600-37 ¶¶ 3-5, 3-7, 6-1, 6-2, 7-1, 7-2.

---

[4] Dep't of Justice, WHETHER SECTION 564 OF THE [FDCA] PROHIBITS ENTITIES FROM REQUIRING THE USE OF A VACCINE SUBJECT TO AN [EUA], 45 Op. O.L.C. ___, slip op. (July 6, 2021), https://www.justice.gov/olc/file/1415446/download.

Adverse action such as separation is not automatic, immediate, or certain. Army policy now requires commanders to initiate involuntary administrative separation proceedings for Soldiers who have refused to be vaccinated against COVID-19 and who do not have a pending or approved exemption request. Army Directive (A.D.) 2022-02 ¶ 4.c(1). But this does not mean the Solider will be separated.

A Soldier's administrative separation process begins when the Soldier is formally notified in writing. A.R. 635-200 ¶ 2-4a. Enlisted Soldiers who have more than six years of active military service, like Crosby, are entitled to a hearing before an administrative separation board. *Id*. ¶ 2-4c. Soldiers being considered for separation are entitled to representation by counsel and are afforded an opportunity to submit evidence and argument, request witnesses, examine witnesses testifying before the board, and challenge evidence offered against them. *Id*. ¶ 2-4b, 2-9b-g, 2-10. At the conclusion of the board proceedings, the board members make a recommendation to the appropriate approval authority as to whether separation is warranted. *Id*. ¶ 2-11a-b. If separation is recommended, the approval authority may accept the board's recommendation and separate the solider or she may nevertheless retain the Soldier. *Id*. ¶¶ 2-12a, 2-12d. The administrative separation process takes several months to complete. If a Soldier is separated for refusing to become vaccinated against COVID-19, the Soldier will be issued either an honorable or general characterization of service, A.D. 2022-02 ¶ 4.d, consistent with the 2022 National Defense Authorization Act, Pub. L. No. 117-81, § 736(a), 135 Stat. 1541, 1800.

Additionally, a Soldier may appeal adverse separation board decisions to the ABCMR. The ABCMR may correct Army records to remove an error or injustice, including redressing an involuntary separation. 10 U.S.C. § 1552; A.R. 15-185.

## LEGAL STANDARDS

"'Federal courts are courts of limited jurisdiction and 'possess only that power authorized by Constitution and statute.'" *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000) (citation omitted). Where a plaintiff fails to demonstrate a court's subject-matter jurisdiction, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). *Langston v. Tex. Cap. Bank, NA*, No. 8:20-cv-2954, 2021 WL 698171, at *2 (M.D. Fla. Feb. 23, 2021). If the Court "ha[s] been presented with 'facts beyond the four corners' of the pleading that are relevant to the question of [subject matter jurisdiction], [the Court] may consider them." *See Corbett v. TSA*, 930 F.3d 1225, 1228 (11th Cir. 2019) (citation omitted).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Judicial review of claims involving the "complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained. *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Aktepe v. United States,* 105 F.3d 1400, 1403 (11th Cir. 1997); *see also*

*Santiago-Lugo v. Warden*, 785 F.3d 467 (11th Cir. 2015). Such deference extends to constitutional claims and military decisions about the health and welfare of Service members. *See e.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

## ARGUMENT

### I.    Crosby's Claims Are Not Ripe

Article III "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). Ignoring Article III's limits "would significantly alter the allocation of power at the national level, with a shift away from a democratic form of government." *Id.* at 499 (quoting *United States v. Richardson*, 418 U.S. 166, 188 (1974) (Powell, J., concurring)).

Crosby's claims are not ripe. "The ripeness doctrine examines 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Corbett*, 930 F.3d at 1232 n.2. (quoting *Elend v. Basham*, 471 F.3d 1199, 1210-11 (11th Cir. 2006)). It "'keeps federal courts from deciding cases prematurely" and "'from engaging in speculation or wasting their resources through the review of potential or abstract disputes.'" *Meza v. U.S. Att'y Gen.*, 693 F.3d 1350, 1357 (11th Cir. 2012) (quoting *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010)). Here, the Amended Complaint focuses on

future, not present, injury. It speculates that Crosby "*will* suffer concrete and particularized harm" including "adverse employment and disciplinary actions, or disciplinary actions,[5] involuntary separation or discharge, loss of fundamental rights." Am. Compl. ¶ 50 (emphasis added). But there are many reasons that these injures are far from certain to occur at all and Crosby faces no hardship from delay.

Crosby has submitted to this Court that he "is willing to take the FDA-licensed Comirnaty vaccine." Compl. ¶ 12. Although he informally sought a COVID-19 vaccine from a "BLA-compliant lot" at military clinics three separate times, Crosby Decl. ¶ 5(f), Crosby has never formally requested such a vaccine using any aspect of the "comprehensive internal system" available "for the review and remedy of complaints and grievances[.]" *See Chappell*, 462 U.S. at 302. Accordingly, he has not obtained "an administrative decision [that] has been formalized" in any way on whether the vaccine he is willing to take is available, *see Wilderness Soc'y v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996) (citation omitted); *Pittman v. Cole*, 267 F.3d 1269, 1279–80 (11th Cir. 2001). Indeed, the Army has assured Crosby and this Court that it would make one of these doses available to Crosby if he submits a memorandum to his commander electing to receive one. ECF No. 45 ¶ 2. Crosby has not explained why he is likely to endure any of the future injuries he alleges will occur if he takes the

---

[5] The adverse disciplinary actions that Crosby appears to allege that he will experience in the future include "dishonorable discharge, forfeiture or all pay and allowances, and confinement for 2 years." Am. Compl. ¶ 26 (citation omitted). As explained, above the line *infra*, these allegations are entirely speculative and inconsistent with the Amended Complaint's allegation that recognizes that Crosby "may receive no worse than a general discharge" for refusing to take the COVID-19 vaccine. *Id.*

vaccine that he is willing to take. Although the Amended Complaint no longer includes this allegation, Crosby has not asked the Court to conclude that his prior contention on this issue was false. Indeed, any "factual contentions" alleged in a pleading must "have evidentiary support[.]" Fed. R. Civ. P. 11(b)(3).

Even if Crosby continues refusing to take the vaccine that he is willing to take, his claims are not fit for review given the uncertain nature of his alleged injuries. Crosby's suggestion that he is certain to receive "dishonorable discharge, forfeiture of all pay and allowances, and confinement," Am. Compl. ¶ 26 (citation omitted); *see also id.* ¶ 50, is, in fact, maximally speculative. The Secretary of the Army has directed that "initiat[ion of] involuntary administrative separation proceedings" follows "for Soldiers who have refused the lawful order to be vaccinated against COVID-19 and who do not have a pending or approved exemption request." A.D. 2022-02 ¶ 4.c(1). The Secretary has explicitly "withh[eld] the authority to impose non-judicial and judicial actions based solely on vaccine refusal[,]" *id.* ¶ 4.k, like those Crosby fears.

That leaves Crosby's speculation that he will receive an "involuntary separation or discharge" for refusing to take the COVID-19 vaccine despite his willingness to take Comirnaty. Am. Compl. ¶ 50.[6] Because Crosby's involuntary separation will not occur pursuant to the challenged DoD vaccination directive "without a second stage of decisionmaking," the challenged DoD directive is not ripe for review. *Wilderness Soc'y*, 83 F.3d at 390. Here, Crosby remains at least three steps of discretionary Army

---

[6] Crosby does not plausibly allege a "loss of veterans and government benefits" that is untethered to a discharge. *See* Am. Compl. ¶ 50.

decisionmaking removed from an involuntary separation or discharge. Because Crosby's "contention that [he] may be subject to [involuntary separation] for refusing to take a vaccine appears to be based on nothing more than speculation[,] . . . Defendants are entitled to dismissal of this case." *Robert v. Austin*, No. 21-cv-02228, 2022 WL 103374, at *3 (D. Colo. Jan. 11, 2022), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *see also Beard*, 370 U.S. at 42.

First, Crosby alleges that he submitted a religious exemption request and that he "has not [yet] received any decision on his request[.]" Am. Compl. ¶ 13. Crosby has "received a temporary administrative exemption" from the vaccination directive while his religious accommodation request is pending. *See Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *16 (D.D.C. Nov. 8, 2021); *see* A.D. 2022-02. And if it is granted, the Army will not initiate separation proceedings for Crosby. *See* A.D. 2022-02 ¶ 4.c(1).

Second, even if the religious accommodation request is denied and Crosby is subject to involuntary separation proceedings, that process itself "is a tentative action not fit for judicial review; one can only speculate as to the final outcome of any proceeding." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). And even if a separation board were to disagree with Crosby's arguments and recommend separation, the Secretary of her designee may reject their recommendation and nonetheless retain Crosby. A.R. 635-200 ¶ 2-12d. The Supreme Court has held that judicial interference with an Army administrative discharge proceeding was premature when the Secretary of the Army had not yet acted on a discharge recommendation

from a separation board. *Beard*, 370 U.S. at 42. The Court should not "easily dismiss the possibility that [Crosby] will have a fair opportunity to make his case to a Board[.]" *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021). Crosby will have "multiple opportunities to present [his] arguments [against separation] to the [Army] and for the [Army] to respond" by deciding to retain him. *See Church*, 2021 WL 5179215, at *10 (citation omitted); *see supra* at 6–7. Unsurprisingly then, "district courts have similarly concluded that military discharge complaints are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *Roberts v. Roth*, ---F. Supp. 3d---, 2022 WL 834148, at *5 (D.D.C. Mar. 21, 2022).

Crosby also fails to demonstrate hardship from delay. First, he has "received a temporary administrative exemption from the vaccine mandate while [his religious accommodation request is] pending . . . which allows [him] to retain [his] position[ ] without receiving the vaccine or facing discipline." *Church*, 2021 WL 5179215, at *16. And even if he religious accommodation request is denied, "[p]ostponement of any decision here would not serve as a hardship to [Crosby] given that a final decision in [his] favor at the involuntary separation proceedings may render this action unnecessary." *Smith*, 541 F. Supp. 2d at 13. Any hardship to Crosby "is mostly theoretical at this point since he has not been actually discharged, so the Court cannot say that 'hardship caused by [ ] deferral' would be so 'immediate and significant' to 'overcome the finality and fitness problems inherent in attempts to review tentative

positions.'" *Roberts*, 2022 WL 834148, at *5 n.3 (quoting *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012)).[7, 8]

## II.   Crosby's Claims are Barred by Military Nonjusticiability Doctrine.

"[A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Winck v. England*, 327 F.3d 1296, 1303 (11th Cir. 2003) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)).[9]

### A. Crosby's Claims for Declaratory and Injunctive Relief are Not Appropriate Under *Mindes* and *Hodges* Because He has not Exhausted All Available Intraservice Corrective Measures.

Binding precedent in this Circuit has long recognized that interests in comity, avoiding constitutional concerns about judicial interference with administration of the military, and effectuating Congress's mechanisms for reviewing military personnel decisionmaking preclude a court's use of declaratory or injunctive relief to interfere with an ongoing military personnel decisionmaking process. *Hodges*, 499 F.2d at 420.

---

[7] Even if Crosby did demonstrate hardship from delay (which he does not) "agency action must satisfy both prongs"—"[u]nsuitability for review is determinative." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 435 n.30 (5th Cir. 2021).

[8] Crosby suggests that he is injured by the "loss of fundamental rights[.]" Am. Compl. ¶ 50. "But surely the naked recitation of a constitutional claim isn't [a] sufficient [Article III injury]; if it were, every § 1983 plaintiff would, by definition, have standing to sue." *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020). Because the concrete injury that Crosby seeks to redress is his speculative discharge, the constitutional provision that Crosby alleges the Army would violate if it were to discharge him for not taking the COVID-19 vaccine is inexorably intertwined with his speculative discharge.

[9] The *Mindes* "test originally developed from claims in which Service members *objected* to a military discharge or other personnel action," *Winck*, 327 F.3d at 1303, as Crosby does here, Am. Compl. ¶¶ 26, 50.

14

Assuming Crosby's claims are not "nonjusticable across-the-board,"[10] he must exhaust "all available military remedies[.]" *Winck*, 327 F.3d at 1303 n.4, 1303 n.5.

In *Hodges v. Callaway*, the Fifth Circuit articulated the military administrative process that must be exhausted "[f]or purposes of this requirement." 499 F.2d at 420. Namely, "two types of administrative bodies provide review of discharge decisions[:]" "[t]he army Discharge Review Board" and the ABCMR. *Id*.[11] Under the rule of *Hodges*, "[i]f the suit was filed after discharge, the court may not retain jurisdiction while the plaintiff resorts to administrative review" and "if the suit was filed before discharge, the court may not stay the discharge pending exhaustion of administrative remedies." *Id*. at 421; *see also McCurdy*, 359 F.2d at 495.[12]

---

[10] Claims for injury that are incident to service in the military are nonjusticiable across-the-board unless the claim mounts a facial challenge to military regulations. *Winck*, 327 F.3d at 1303 n.5; *Speigner v. Alexander*, 248 F.3d 1292, 1296 (11th Cir. 2001). "Because there are a limited number of positions available at the higher levels of command, it is imperative to the military that only those officers determined to be competent to serve are retained." *Koury v. McHugh*, No. 2:10-cv-3643, 2012 WL 12952633, at *4 (N.D. Ala. Jan. 23, 2012) (quoting *Speigner*, 248 F.3d at 1298), *aff'd*, *Koury v. Sec'y, Dep't of Army*, 488 F. App'x 355 (11th Cir. 2012); *see also Burnett v. Pridmore*, No. CV 99-B-2718, 2000 WL 33941953, at *5-6 (N.D. Ala. Sept. 6, 2000) (finding equal protection claim nonjusticiable), *aff'd* 277 F.3d 1377 (11th Cir. 2001).

[11] Under 10 U.S.C. § 1552, Congress has established a Board for Correction of Military Records ("BCMR") in each military department. Each BCMR is a board composed of at least three high-ranking civilian employees. The Secretary of each military department, acting through the appropriate BCMR, possesses plenary authority to afford relief to Service members injured by adverse personnel actions, including but not limited to reversing involuntary separations, removing adverse information from personnel files, and awarding back pay and allowances. The Secretary of each military department, acting through the BCMR, may "correct any military record . . . when . . . necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

[12] Courts routinely apply the requirement that a Service member exhaust her claims before the applicable Board for Correction of Military/Naval Records before bringing suit. *See, e.g., Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *Rucker v. Sec'y of the Army*, 702 F.2d 966, 970 (11th Cir. 1983); *Von Hoffburg v. Alexander*, 615 F.2d 633, 638, 641 (5th Cir. 1980); *Mindes*, 453 F.2d at 198; *McCurdy*, 359 F.2d at 495; *Leicht v. McHugh*, No. 13-60015-CIV, 2013 WL 11971266, at *2-4 (S.D. Fla. May 24, 2013); *Layman v. Harvey*, No. 8:05-cv-2208, 2007 WL 430678, at *6-10 (M.D. Fla. Feb. 5, 2007); *see also Nelson v. Miller*, 373 F.2d 474, 479 (3d Cir. 1967) ("The Fifth Circuit . . . has

Crosby has not exhausted his intraservice remedies for the feared discharge he seeks to redress. Again, Crosby speculates that he may be discharged, Am. Compl. ¶ 50, but he may raise his claims before a board during discharge proceedings, so it is far from clear whether he will ultimately be discharged. *See supra* at 6–8. If Crosby is discharged, he must first seek reinstatement or other redress from the ACMBR before judicial review. *Winck*, 327 F.3d at 1303 n.4; *Hodges*, 499 F.2d at 420–24; *Mindes*, 453 F.2d at 198, 201; *McCurdy*, 359 F.2d at 495.

Moreover, nothing in RFRA implicitly overrules *Mindes* or its exhaustion requirement. RFRA permits suits for "appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The Amended Complaint seeks declaratory and injunctive relief against the military. Am. Compl. Relief Requested. "[D]eclaratory judgment and injunctive remedies are equitable in nature[.]" *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967). Suits for equitable "relief against" the military are not "appropriate[,]" *see* 42 U.S.C. § 2000bb-1(c), under *Mindes* unless its requirements are satisfied.[13]

---

held that where post-discharge review could grant the complaining party 'complete retroactive restoration,' the district court was required to dismiss the complaint[.]") (citation omitted). Several courts have recently denied relief to Service members who failed to exhaust their separation remedies before pursuing RFRA and First Amendment claims. *See Church*, 2021 WL 5179215, at *10-11; *Roberts*, 2022 WL 834148, at *4-5; *Mark Short v. Berger*, No. CV22-1151, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022).

[13] Contrary to one court's erroneous view, *see Navy SEAL 1 v. Austin*, ---F. Supp. 3d---, 2022 WL 534459, at *20 (M.D. Fla. Feb. 18, 2022), *denying stay pending appeal*, 2022 WL 710321 (M.D. Fla. Mar. 2, 2022), Congress's use of the term "appropriate relief" does not grant courts license to ignore longstanding precedent cabining discretion in considering demands for equitable relief against the military. "Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 395 (2006) (Roberts, C.J., concurring) (citation omitted). "When it comes to discerning and applying those standards, in this area as in others, 'a page of history is worth a volume of logic.'" *Id*. (citation omitted). Indeed, Congress indicated that it is appropriate to look to "Federal court

## B. The *Mindes* Factors Weigh Against Granting Review.

Even if Crosby had exhausted all available military remedies, the Court would still need to balance four factors to determine whether to review Crosby's claims: (1) "[t]he nature and strength of the plaintiff's challenge to the military determination"; (2) "[t]he potential injury to the plaintiff if review is refused"; (3) "[t]he type and degree of anticipated interference with the military function"; and (4) "[t]he extent to which the exercise of military expertise or discretion is involved." *Winck*, 327 F.3d at 1303 n.4 (quoting *Mindes*, 453 F.2d at 201); *Stinson v. Hornsby*, 821 F.2d 1537, 1540 (11th Cir. 1987). Each factor weighs against Crosby here.

First, this Court has already determined that Crosby is "unlikely to prevail" on his claim that the vaccination directive is contrary to 10 U.S.C. § 1107a. *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *2 (M.D. Fla. Mar. 1, 2022); *see* Am. Compl. ¶¶ 51-61. The Amended Complaint also claims that the military's immunization program violates the Administrative Procedure Act ("APA"), *id.* ¶¶ 62–69, but Crosby "point[s] to no prior case in which an APA-based challenge to an internal military policy survived *Mindes* scrutiny,"[14] *Kuang v. U.S. Dep't of Def.*, 778 F.

---

rulings" prior to *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), when construing RFRA. 42 U.S.C. § 2000bb(a)(4)-(5). "[A] major departure from the long tradition of equity practice should not be lightly implied." *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).

[14] Although an arbitrary and capricious claim arising under the APA is not identical to an arbitrary and capricious claim arising from due process, it is notable that courts "have denied review when the constitutional claim was that a serviceman's due process rights were violated by arbitrary and capricious official action." *Nesmith v. Fulton*, 615 F.2d 196, 202 (5th Cir. 1980); *see also Woodward v. Marsh*, 658 F.2d 989, 994-95 (5th Cir. 1981); *West v. Brown*, 558 F.2d 757, 760 (5th Cir. 1977). The APA arbitrary and capricious "standard is exceedingly deferential." *Sierra Club v. Van Antwerp*, 526

17

App'x 418, 420 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 2565 (2021). Similar claims have been rejected. *Oklahoma v. Biden*, --- F. Supp. 3d ---, 2021 WL 6126230, at *11 n.29 (W.D. Okla. Dec. 28, 2021); *see also Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1290-91 (11th Cir. 2021) (concluding plaintiff unlikely to succeed in APA claim against vaccination requirement outside military context).

Success on Crosby's RFRA and Free Exercise Claims, Am. Compl. ¶¶ 70–94, would require him to demonstrate that his vaccination orders substantially burden "a belief, not a preference, that is sincerely held and religious in nature, not merely secular[.]" *GeorgiraCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1256-57 (11th Cir. 2012). But Crosby is unlikely to make these showings because he has submitted that he "is willing to take the FDA-licensed Comirnaty vaccine[,]"[15] Compl. ¶ 12—a "factual contention[] [that must] have evidentiary support[,]" Fed. R. Civ. P. 11(b)(3). Indeed, Crosby's latest sworn testimony reiterates that the concerns underlying his religious accommodation requests are not his "main complaint[.]" ECF No. 58-1 at 3 ¶ 5(k).[16]

F.3d 1353, 1360 (11th Cir. 2008) (quoting *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)).

[15] According to one court, the orders-of-magnitude increase in Service members requesting religious exemptions from the COVID-19 vaccine compared to all other vaccines strongly suggests that many Service members may have applied for religious exemptions based on something other than sincerely held religious beliefs. *Navy SEAL 1 v. Austin*, No 22-0688, 2022 WL 1294486, at *9 n.5 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022).

[16] Notably, the allegations described in the Amended Complaint and in the attached materials are strikingly similar to the beliefs that the Third Circuit concluded fall outside of the scope of those encompassed by the definition of religion. *Compare* Am. Compl. ¶ 45 ("[I]f I believe something is harmful to my body, I am sinning if I knowingly and intentionally do it anyway."), *with*, *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (Plaintiff's belief that "one should not harm their [sic] own body and strong[] belie[f] that the flu vaccine may do more harm than good" is not religious). The Third Circuit explained that "[t]his one moral commandment is an 'isolated moral teaching'; by itself, it is not a comprehensive system of beliefs about fundamental or ultimate matters." *Id*. (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981)).

18

Even if Crosby could meet his burden under RFRA, Congress has explained that "the compelling interest test as set forth in [ ] Federal court rulings" prior to *Smith* "is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(4)-(5).  Under the test applied under those rulings involving a military interest, this Court "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); *see also* S. Rep. No. 103-111, at 12 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (deference principles apply to RFRA claims); *Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (reiterating the "reluctan[ce] to intrude upon the authority of the Executive in military . . . affairs"). Even without applying these deference principles, courts have rejected similar claims by other Service members. *See, e.g. Roth v. Austin*, No. 8:22CV3038, 2022 WL 1568830, at *28 (D. Neb. May 18, 2022), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022).[17]

Second, Crosby's alleged potential "loss of military membership" may be "of great importance to the plaintiff," but it is "not sufficient to warrant civilian judicial intervention in a military decision." *Nesmith v. Fulton*, 443 F. Supp. 411, 413 (M.D.

---

[17] Because Army authorities have not yet decided whether to grant or deny Crosby's religious accommodation request, the Government is not in a position to inform the Court whether denying Crosby's request would serve a compelling military interest and is the least restrictive means of furthering that compelling interest.  Defendants note, however, that Crosby did not offer any less restrictive alternatives to vaccination for the military to consider. ECF No. 58-1 at 31-33; *see United States v. Grady*, 18 F.4th 1275, 1286 (11th Cir. 2021) (holding government must refute only "alternative schemes proposed by the petitioners"), *denying pet. for cert.*, No. 21-1297 (U.S. Mar. 25, 2022); *Smith v. Owens*, 13 F.4th 1319, 1326–27 (11th Cir. 2021) (same).

Ga. 1978)*, aff'd*, 615 F.2d 196 (5th Cir. 1980); *see also Khalsa v. Weinberger*, 779 F.2d 1393, 1400 (9th Cir. 1985), *aff'd*, 787 F.2d 1288 (9th Cir. 1985). Again, no separation proceeding has even begun, leaving the nature and extent of any injury wholly speculative. *See supra* at 6–8, 9-16. The Court should not "easily dismiss the possibility that [Crosby] will have a fair opportunity to make his case to a Board" if one were convened. *Shaw*, 539 F. Supp. 3d at 183. "[T]he threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single [discharge] prosecution." *Cf. Younger v. Harris*, 401 U.S. 37, 46 (1971). Because "any harms Plaintiff will face are not irreparable or certain to occur[,]" "[t]he second factor weighs against judicial review." *Mark Short*, 2022 WL 1051852, at *4.

The final *Mindes* factors often "present a single inquiry, focusing on disruption of military functions[.]" *West*, 558 F.2d at 760-61. "[M]ilitary readiness and unit cohesion would be unacceptably harmed should the Court" issue the prayed-for declaratory or injunctive relief implicating the "DoD Vaccine Mandate." *Church*, 2021 WL 5179215, at *18. *See, e.g.*, ECF Nos. 15-15; 15-16. "[F]orcing the [Army] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short v. Berger*, No. 22-00444, 2022 WL 1203876, at *15 (D. Ariz. Apr. 22, 2022), (quoting *Mark Short*, 2022 WL 1051852, at *5), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022). Crosby is "subject to immediate, involuntary order to active duty by the President or Congress," ECF No. 15-33 ¶ 3, and sending him "into combat without maximizing [his unit's] odds of success, such as would be the

20

case with [other deficiencies, like] working weapons or the means to reliably accomplish the mission, is a dereliction of duty." *Navy SEALS 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (citation omitted). Even the risk of a single individual such as Crosby going unvaccinated is serious because unvaccinated individuals have many times the risk of testing positive for COVID-19. ECF No. 15-16 ¶¶ 16-18. In order to review Crosby's claims, the Court "would necessarily involve itself in 'complex, subtle and professional decisions as to the composition, training, equipping, and control of a military force.'" *Thomas Short*, 2022 WL 1203876, at *15 (quoting *Mark Short*, 2022 WL 1051852, at *5). By requiring the military to retain, deploy, or assign Crosby without regard for his vaccination status, the Court would improperly insert itself into the Crosby's chain of command, overriding military commanders' expert judgments about operational needs, including Crosby's fitness to deploy and carry out his duties. "[T]he public's interest in military readiness and the military's interest in Plaintiff's health outweigh Plaintiff's [claimed] religious liberty interest." *Navy SEAL 1*, 2022 WL 1294486, at *16.

### III.    Many of Crosby's Claims Fail as a Matter of Dispositive Issues of Law.

### A. Crosby Lacks APA Standing to Challenge the Vaccination Directive as Contrary to 10 U.S.C. § 1107a.

Crosby cannot claim that any agency action is contrary to § 1107a, *see* 5 U.S.C. § 706, if his interest in opposing vaccination is religious or philosophical. The APA's grant of standing to persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute," *id.* § 702, does not extend to the full reach of Article III, and is satisfied only if the plaintiff's interests are "arguably within the zone of interests to be protected or regulated by the statute" that the plaintiff says was violated. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-30 (2014). Thus, if Crosby has "sincerely held religious beliefs that compel him to oppose the mandate[,]" Am. Compl. ¶ 45, that interest is not within the zone of interests of the applicable statute or regulation. It cannot reasonably be assumed that, in "[t]he particular language of" Section 1107a, "Congress intended to protect" outright objection to a vaccine on religious or philosophical grounds regardless of whether it is FDA approved. *See Air Courier Conf. of Am. v. Am. Postal Workers Union, AFL-CIO*, 498 U.S. 517, 524-25 (1991). For these reasons, count one, Am. Compl. ¶¶ 51-61, must be dismissed.

### B. The APA Does Not Authorize Crosby's Programmatic Attack.

The Court must dismiss Crosby's first and second counts, Am. Compl. ¶¶ 51-69, because he fails to clearly identify the "circumscribed, discrete agency action[]" or actions at issue. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). "Under

22

the terms of the APA, [Crosby] must direct its attack against some particular 'agency action' that causes [him] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

Here, the Amended Complaint does not merely seek review of the Secretary's August 2021 Memorandum. Rather it seeks review of an uncircumscribed list of "the Army's implementing orders and guidance[.]" *See, e.g.*, Am. Compl. ¶ 53. But as the Supreme Court made clear in *Lujan v. National Wildlife Federation*, a plaintiff cannot use the APA to bring a collective challenge to a sweeping group of actions. Broad programmatic attacks are not "agency action" under 5 U.S.C. §§ 704, 706(2). The Amended Complaint does not identify the implementing orders and guidance it challenges with any degree of clarity. Indeed, paragraph three of the Amended Complaint uses an "*e.g.*" signal after referring to "orders implementing the DoD Mandate across the DoD and Army[,]" Am. Compl. ¶ 3, leaving Defendants to speculate as to the breadth of particular actions being challenged beyond the two cited documents. Crosby may not challenge "the continuing (and thus constantly changing) operations of the" Army as it carries out its vaccination policies. *See Lujan*, 497 U.S. at 890. Yet Crosby's purported APA counts appear to challenge administration of a program generally, not a particular agency action. *See, e.g.*, Am. Compl. ¶ 53 ("While the DoD Mandate itself states that only FDA-licensed vaccines may be mandated, . . . Defendants DoD and Army are in fact mandating EUA-labeled vaccines.").

That the Secretary's August 2021 Memorandum might be an agency action does not correct the Amended Complaint's flaws. In *Lujan*, the Supreme Court dispelled

any notion that the existence of one agency action permits a suit that nonetheless raises a programmatic challenge to proceed:

> It is at least entirely certain that the flaws in the entire 'program'— consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects [a plaintiff].

*See Lujan*, 497 U.S. at 892–93.

### C. Crosby's Free Exercise Clause Claim Fails.

Crosby claim, Am. Compl. ¶¶ 86–94, that DoD's immunization program violates the Free Exercise Clause because "his religious beliefs prohibit him from receiving the available COVID-19 vaccines," *id.* ¶ 90, fail as a matter of law. "The desirability" of the immunization program "in the military is decided by the appropriate military officials, and they are under no constitutional mandate to abandon their considered professional judgment." *Goldman*, 475 U.S. at 509.

Crosby claims that strict scrutiny applies to this claim, Am. Compl. ¶ 89, but he "cite[s] no authority for" his "assumption that courts should review . . . military actions under" such a "free-ranging inquiry[.]" *See Trump v. Hawaii*, 138 S. Ct. 2392, 2420 n.5 (2018). Crosby fails to plead facts that "permit the court to infer more than the mere possibility" that the challenged immunization program is based on anything other than considered professional military judgment. *See Ashcroft*, 556 U.S. at 679; *Goldman*, 475 U.S. at 509; *see also Navy SEAL 1*, 2022 WL 1294486, at *13.

24

**IV.  If Crosby's Submission That he is Willing to Take Comirnaty is False, it Justifies Withholding Equitable Relief.**

Defendants have assumed that Crosby did not mean to mislead the Court in stating that he "is willing to take the FDA-licensed Comirnaty vaccine." Compl. ¶ 12. Of course, any determination that this submission was false would not justify moving forward to adjudicate Crosby's "equitable in nature" claims for declaratory and injunctive relief. *See Abbott Labs.*, 387 U.S. at 155. "When a party seeking equitable relief 'has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022) (citation omitted). "[L]ate-breaking changes in position, last-minute claims arising from long-known facts, and other 'attempt[s] at manipulation' can provide a sound basis for denying equitable relief[.]" *See id*. (citation omitted). To obtain equitable relief, a plaintiff must "have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).

The Court should not tolerate a plaintiff's submissions about his willingness to receive a vaccine—a matter he is uniquely positioned to truthfully address—in order to mislead the Court and the respondent. If Crosby is not willing to receive Comirnaty, the Court should consider this circumstance in deciding his entitlement to relief.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed under 12(b)(1) or, in the alternative, under Rule 12(b)(6).

Dated: June 1, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Liam C. Holland*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
LIAM C. HOLLAND
CATHERINE M. YANG
MICHAEL P. CLENDENEN
JOHNNY H. WALKER
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*