IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**Howard Crosby**,

                Plaintiff,

v.

**Lloyd Austin, III.**, in his official capacity as Secretary of Defense, *et al.*,

                Defendants.

Case No. 8:21-cv-02730-SDM-CPT

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND RULE 54(b) CERTIFICATION**

Plaintiff Sergeant Major Howard Crosby Jr. has moved for the entry of partial final judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, *see* ECF No. 69, so that he may immediately appeal the Court's dismissal of his Administrative Procedure Act ("APA") claims. Crosby asks the Court to find that entry of final judgment on the APA claims is warranted because the APA claims are separable from the remaining Religious Freedom Restoration Act ("RFRA") and Free Exercise Clause claims and there is no just reason for delay. ECF No. 69 at 5-18.

The Government obviously favors the ultimate entry of final judgment for the Defendants as to the claims that have been dismissed. But the question posed by Crosby's motion is not whether final judgment should be entered as to the APA claims, but when. Each of Crosby's claims in the Amended Complaint seek to redress his speculative future discharge for not complying with the requirements of the Army's longstanding immunization program, which now includes the COVID-19 vaccine. Not all of those claims have been finally resolved. The better reading of applicable

authority weighs against entry of partial final judgment in the circumstances of this case.

Rule 54(b) must be applied in a manner that effectively preserves "the historic federal policy against piecemeal appeals." *Curtiss-Wright Corp. v. Gen. Electric Co.*, 446 U.S. 1, 8 (1980) (citation omitted). In particular, "Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997) (quoting *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)). "[S]uch circumstances will be encountered only rarely" and the Eleventh Circuit has "counseled district courts to exercise the limited discretion afforded by Rule 54(b) conservatively." *Id*. Because Crosby has not demonstrated that the dismissed and remaining claims satisfy the separate-recoveries test and because there are no equities overcoming the historic policy against piecemeal appeals, the Court should deny the motion.

## BACKGROUND

**I. Crosby's Noncompliance with Army Immunization Requirements and Informal Requests for a "BLA-Complaint Lot" of a COVID-19 Vaccine**

Sergeant Major Howard Crosby Jr. is a noncommissioned officer in the U.S. Army Reserve Individual Mobilization Augmentation program and "subject to immediate, involuntary order to active duty by the President or Congress." ECF No.

15-33 ¶¶ 2- 3. On October 12, 2021—nearly two months after Secretary Austin directed that the COVID-19 vaccination be included among required vaccinations for military Service members—Crosby's commander counseled him regarding the requirement. *Id.* ¶ 5. Afterward, Crosby stated in writing that he disagreed with the information because, in his view, he was being ordered to take a vaccination that was under an Emergency Use Authorization ("EUA"). *Id.*[1]

On August 23, 2021, the FDA approved a Biologics License Application ("BLA") for the Pfizer vaccine, for individuals who are 16 years of age and older. ECF No. 1-4. A BLA is an application for approval to introduce, or deliver for introduction, a biologic product into interstate commerce. 21 C.F.R. § 601.2.[2] "Comirnaty"[3] is also available under an EUA for the approved and other uses. At the time of approval, the FDA worked with Pfizer to identify "BLA-compliant" lots of the vaccine, which are lots of the vaccine that were manufactured in facilities listed in the BLA and that had undergone lot release, but which bore the EUA label. ECF No. 1-4 at 27. The FDA additionally determined that the approved and EUA vaccine could be used interchangeably without presenting any safety or effectiveness concerns.

---

[1] Service members may comply with current immunization requirements with respect to COVID-19 by taking a vaccine that has received "full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance" or by taking a vaccine "under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dosage requirements[.]" ECF No. 1-2.

[2] *See* FDA, Biologics License Applications (BLA) Process (CBER) (Jan. 27, 2021), https://www.fda.gov/vaccines-blood-biologics/development-approval-process-cber/biologics-license-applications-bla-process-cber.

[3] "Comirnaty" is the proprietary name of a COVID-19 vaccine manufactured by Pfizer, Inc. ECF No. 1-3.

https://www.fda.gov/media/150386/download, at 3 n.15. On January 31, 2022, the FDA approved a second COVID-19 vaccine, Spikevax, manufactured by ModernaTX, Inc. https://www.fda.gov/media/155815/download.

On November 15, 2021, Crosby requested "Comirnaty" from an Army clinic at Fort Sill, Oklahoma. Supp. Declaration of SGM Howard A. Crosby Jr., ECF No. 25-1 at 8-20 ("Crosby Decl.") ¶ 5(f). In requesting the "Comirnaty" vaccine, Crosby provided military clinics "with the lot numbers that were stated as BLA compliant[.]" *Id*. On the same date, Crosby submitted a religious exemption request. ECF No. 15-33 ¶ 6. Two days later, Crosby went to a clinic at MacDill Air Force Base, again asking for "a BLA compliant lot[.]" Crosby Decl. ¶ 5(f). Finally, on January 13, 2022, Crosby once more visited MacDill Air Force Base and "asked for Comirnaty[,]" specifically "ask[ing] for the lot number." *Id*. Although Crosby has requested "a BLA-compliant lot" from military clinics three times, Crosby has never requested such a dose using a formal avenue of military redress. After the Court's preliminary injunction hearing, Defendants informed Crosby that the Army would make one of the doses he has requested available to him if he submits a memorandum to his commander electing to receive one. ECF No. 45 ¶ 2.

## II. 10 U.S.C. § 1107a

10 U.S.C. § 1107a makes no mention of religious, political, or philosophical objections to any medial product. It provides that "[i]n the case of the administration of [an EUA] product . . . to members of the armed forces, the condition described in" the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 360bbb-3, "designed to

4

ensure that individuals are informed of an option to accept or refuse administration of a product, may be waived only by the President if the President determines, in writing, that complying with such requirement is not in the interests of national security." 10 U.S.C. § 1107a(a). A comprehensive analysis of the FDCA provision and its cognate provisions, § 1107a, is available in a 2021 Office of Legal Counsel opinion.[4]

### III.  Procedural History

On November 19, 2021, Crosby and sixteen other service members filed a complaint[5] challenging what they refer to as the "DoD Mandate" which includes Secretary Austin's August 2021 Memorandum adding the COVID-19 vaccine to the list of those required for Service members to be ready to defend the United States and fit for military service. ECF No. 1. The Complaint alleged that Crosby "is willing to take the FDA-licensed Comirnaty vaccine, but not the EUA BioNTech Vaccine." ECF No. 1 ¶ 12.

On December 13, 2021, Crosby filed a motion for preliminary injunctive relief. ECF No. 10. Although other former plaintiffs claimed a substantial likelihood of success on RFRA and Free Exercise Clause grounds, Crosby did not. *See id.* at 7-8 (stating that eight former plaintiffs—not including Crosby—"have sincerely held religious beliefs that compel them to abstain from being administered the COVID-19

---

[4] Dep't of Justice, WHETHER SECTION 564 OF THE [FDCA] PROHIBITS ENTITIES FROM REQUIRING THE USE OF A VACCINE SUBJECT TO AN [EUA], 45 Op. O.L.C. ___, slip op. (July 6, 2021), https://www.justice.gov/olc/file/1415446/download.

[5] Two plaintiffs later voluntarily dismissed their claims and, on February 22, 2022, the Court severed and dismissed all claims other than those alleged by Crosby. *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *1 n.1 (M.D. Fla. Mar. 1, 2022).

vaccine"). Instead, Crosby claimed a substantial likelihood of success on his claim that Secretary's decision to add COVID-19 to the list of required immunizations "violate[s] federal laws . . . insofar as [it] mandate[s] or permit[s] the administration of the EUA Pfizer-BioNTech Vaccine[.]" *Id.* at 11.

On February 11, 2022, the Court held a hearing on the motion for preliminary injunctive relief. ECF No. 34. Crosby provided testimony at the hearing about his "inquiries about the FDA-approved vaccine." Tr. of Mot. Proceedings Before the Hon. Thomas P. Barber at 44:5-45:10. After the Court realized that Crosby's "position is there are no FDA-approved vaccines" the Court instructed him to leave the witness stand. *Id.* at 46:8-15.

On March 1, 2022, the Court issued an order denying Crosby's preliminary motion, explaining that "Crosby does not allege that he was specifically denied an FDA-licensed dose." *Crosby v. Austin*, No. 8:21-cv-2730, 2022 WL 603784, at *2 (M.D. Fla. Mar 1, 2022). The Court explained that "Defendants indicated that they believed that Comirnaty was available and that . . . the military would be able to make sure he gets the proper vial." *Id.* at *2 n.3. After the decision, Defendants informed Crosby that the Army would make one of the doses he has informally requested available to him if he submits a memorandum to his commander electing to receive one. ECF No. 45 ¶ 2.

After Crosby declined to request Comirnaty from his command, Defendants filed a motion to dismiss the Complaint. ECF No. 54. In response, on May 18, 2022, Crosby filed an Amended Complaint that removed his prior allegation that he is

6

willing to receive Comirnaty. In its place, Crosby alleges that he has "sincerely held religious beliefs that compel him to oppose the mandate" including a "firmly held religious belief that these vaccines are being used to bring on the mark of the beast, if they are not the mark of the beast themselves." ECF No. 58 ¶ 45. Along with the Amended Complaint, Crosby submitted an additional sworn declaration attesting that his religious objection is not his "main complaint[.]" ECF No. 58-1 ¶ 5(h). Instead, his "main complaint is that the licensed and labeled vaccine is not available and they are administering a vaccine that is still under EUA." *Id*.

Among other relief, the Amended Complaint seeks an order enjoining "the implementation or enforcement of the DoD Mandate by the Defendants with respect to the Plaintiff." Am. Compl. Relief Requested. The four-count Amended Complaint attempts to plead claims under the Administrative Procedure Act, *id*. ¶¶ 51-69;[6] under the Religious Freedom Restoration Act, *id*. ¶¶ 62-69, and under the Free Exercise Clause of the First Amendment to the United States Constitution, *id*. ¶¶ 70-94.

On June 24, 2022, the Court issued an order on Defendants' motion to dismiss. ECF No. 63. The Court dismissed all claims "other than Plaintiff Howard Crosby's religious objections[.]" *Id*. at 2. The Honorable Judge Thomas P. Barber also transferred the case to this Court, "as it appears related to a pending class action

---

[6] The APA claims involve 10 U.S.C. § 1107a and the APA's proscription of arbitrary and capricious final agency action. Am. Compl. ¶¶ 51-69. The Amended Complaint indicates that the 10 U.S.C. § 1107a issue is "brought under the APA." *Id*. ¶ 56.

lawsuit before his Honor." *Id.*[7] On July 8, 2022, Defendants filed an Answer. ECF No. 65. On August 15, 2022, the parties filed a case management report. ECF No. 68. The following day, Crosby filed the pending motion for entry of final judgment and Rule 54(b) certification. ECF No. 69.

## ARGUMENT

I. **Rule 54(b) Must be Applied to Preserve the Historic Policy Against Piecemeal Appeals.**

Rule 54(b) provides that

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

*See* Fed. R. Civ P. 54(b). The Supreme Court set out a framework for applying the rule in *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956), which it repeated in *Curtiss-Wright*, 446 U.S. at 7-10. *See Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777-78 (11th Cir. 2007).

"A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." *Lloyd Noland*, 483 F.3d at 777. A district court must first determine that it has rendered a "final

---

[7] At the time of the order, no relevant class action was pending before this Court. On August 18, 2022, this Court certified a class comprising certain persons who serve under the command of the Marine Corps who submitted certain religious accommodation requests. Order Certifying Class and Issuing Classwide Prelim. Inj., *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-01275, ECF No. 229 at 47 (M.D. Fla. Aug. 18, 2022). Crosby is not a member of the class. A lawsuit brought by three Soldiers in the United States Army raising claims under RFRA related to Army's immunization program has been dismissed. *Colonel v. Austin*, No. 8:22-cv-1277, ECF No. 195 (M.D. Fla. July 5, 2022). No class had been certified in that matter.

judgment," that is, a judgment that is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action'" and a "'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Curtiss-Wright*, 446 U.S. at 7 (quoting *Mackey*, 351 U.S. at 436); *see also Lloyd Noland*, 483 F.3d 773. Once having found finality, the district court must go on to determine whether there is any just reason for delay. *Curtiss-Wright*, 446 U.S. at 8. The function of the district court at step two is to act as a "dispatcher" exercising sound judicial discretion to determine the "appropriate time" when each final decision in a multiple claims action is ready for appeal. *Id*. (quoting *Mackey*, 351 U.S. at 435, 437). This "limited discretion[,]" *Ebrahimi*, 114 F.3d at 166, is to be exercised "in the interest of sound judicial administration" in order "to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals[,]'" *Curtiss-Wright*, 446 U.S. at 8 (quoting *Mackey*, 351 U.S. at 437, 438).

**II.     Crosby Has Not Established that His Claims Are "Final" Within the Meaning of Rule 54(b) Because the Claims that Have Been Disposed of Are Not Separable.**

"A district court has the discretion to certify a judgment for immediate appeal only when it is 'final' within the meaning of Rule 54(b), which means that the judgment disposes entirely of a separable claim or dismisses a party entirely." *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995). "[T]he touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or

9

'substantially overlap[ping]' with remedies being sought by the remaining claims pending in the district court." *Lloyd Noland*, 483 F.3d at 780 (quoting *In re Se. Banking Corp.*, 69 F.3d at 1547).

When courts "consider whether claims are separate, [courts] keep in mind the purpose and practical implications of Rule 54(b)." *In re Se. Banking Corp.*, 69 F.3d at 1547. "It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below." *Spiegel v. Trustees of Tufts Coll.*, 843 F.2d 38, 44 (1st Cir. 1988).

In this case, Crosby seeks only prospective declaratory and injunctive relief. Am. Compl. Relief Requested. For example, among other relief, he requests that the Court permanently "[e]njoin the implementation of enforcement of the DoD Mandate by the Defendants with respect to the Plaintiff[,]" *id.*, which corresponds with the inherently individualized nature of the remaining Religious Freedom Restoration Act claim,[8] *see Smith v. Owens*, 14 F.4th 1319, 1328 (11th Cir. 2021) (quoting *Tucker v. Collier*, 906 F.3d 295, 301 (5th Cir. 2018)) (explaining that RLUIPA, like RFRA, "mandates" that the district court conduct "an individualized inquiry").

---

[8] Defendants maintain that declaratory or injunctive relief interfering directly with ongoing "disciplinary or executive functions of the armed services" is not appropriate relief under RFRA. *See McCurdy v. Zuckert*, 359 F.2d 491, 495 n.6 (5th Cir. 1966). Rather, "any possible injury could be repaired" by a petition to the Army Board for Correction of Military Records. *See id.* at 494. "Board decisions are subject to judicial review and can be set aside" if the Army has violated RFRA as appropriate relief for a RFRA violation. *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). "[A] major departure from the long tradition of equity practice should not be lightly implied." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citation omitted).

Crosby contends that the dismissed claims are separable from the remaining claims because the dismissed claims challenge "the DoD Mandate itself"[9] while the remaining claims relate to his efforts to seek an exemption from that policy based on his claim that the policy substantially burdens a sincere religious belief of his. ECF No. 69 at 5-8. Crosby also contends that the dismissed counts and remaining counts require distinct evidence and discovery. *Id.* at 12-13. But assuming that Crosby is challenging different agency actions and that the record for one set of counts would not be relevant to the others,[10] Crosby cites no authority indicating that these issues are relevant to determining whether an entire claim has been adjudicated for purposes of Rule 54(b) in this circuit. Rather, "the touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or 'substantially overlap[ping] with remedies being sought by the remaining claims[.]" *Lloyd Noland Found.*, 483 F.3d at 780 (citation omitted).

Application of that standard here indicates that an entire separable claim for relief has not been adjudicated. Given the prospective nature of the remedies Crosby prays for in the Amended Complaint, an injunction precluding the Army from separating Crosby would moot his interest in appellate review of his dismissed APA claims. *See Lloyd Noland Found.*, 483 F.3d at 780; *Spiegel*, 843 F.2d at 44-45 (Rule 54(b)

---

[9] It is far from clear what, specifically, Crosby refers to when he says the "DoD Mandate." *See* ECF No. 60 at 22-24.

[10] Defendants do not concede these points.

certification improper where certified claims "would be largely (if not entirely) mooted and the need for appellate review would vanish" after an order associated with claim that "remains pending for trial in the district court[.]").

Crosby contends that it "would not be 'mutually exclusive'" to raise separate legal arguments in support of the requested declaratory and injunctive relief. ECF No. 69 at 8 (citation omitted). But "mere variations of legal theory do not constitute separate claims[.]" *Local P-171, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1071 (7th Cir. 1981). "[W]hen the plaintiff presents more than one legal theory, but will be permitted to recover on only one of them[,] . . . there is only a single inseparable claim for relief." *Lloyd Nolan Found.*, 483 F.3d at 780 (quoting *In re Se. Banking Corp.*, 69 F.3d at 1547).

In sum, if the Government were to prevail on the remaining RFRA claim, the Court of Appeals would consider the denial of relief redressing the same speculative future injury – albeit on different grounds. And, notably, a favorable disposition for Crosby on his remaining claims—including entry of the requested injunction in the Amended Complaint's Prayer for Relief—would leave him "with no reason to press the [APA] one[s]" that he seeks to appeal now. *See Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 581 n.18 (1980) (cited in *In re Se. Banking*, 69 F.3d at 1547); *see also In re Se. Banking*, 69 F.3d at 1550 (Rule 54(b) certification proper where "review of the[] adjudicated claims would not be mooted by any future developments in the case") (describing *Curtiss-Wright*, 446 U.S. at 6-7). Because the requested injunction, if entered, would redress his speculative future discharge, the APA claims that Crosby

seeks to certify for final judgment would be moot. *See Spiegel*, 843 F.2d at 44. In that circumstance, Crosby's cannot separately enforce his APA claim because he would have no interest in any order addressing any aspect of an immunization program with which he would be exempt from complying.[11]

Consideration of "the practical affect [sic] of piecemeal appeal[] [here] on appellate court caseloads[,]" *In re Se. Banking*, 69 F.3d at 1550, cautions against certification as well. Consider the matter from the point of view of the Court of Appeals. If the Court certifies Crosby's dismissed APA claims under Rule 54(b), the Eleventh Circuit may well have to address his efforts to redress his speculative future discharge twice. If Crosby succeeds on his remaining claims—including obtaining the individualized injunction requested in the Amended Complaint—however, he will have no interest in pressing the dismissed claims. Thus, issuing a Rule 54(b) certification at this stage on these interrelated claims would rob the Appellate Court of the option of finding "it unnecessary to address [Crosby's dismissed APA claims] on the ground that" it might affirm an injunction precluding his discharge on RFRA or Free Exercise Clause grounds. *See Jordan v. Pugh*, 425 F.3d 820, 828-29 (10th Cir. 2005).

---

[11] Crosby asserts that relief on his RFRA claim would require the entry of a different order. ECF No. 69 at 9-10. While that is not so, it also largely differs from what Crosby has pleaded in his prayer for relief in the Amended Complaint. Am. Compl. Relief Requested. In any event, Crosby explicitly requests an order enjoining "the implementation or enforcement of the DOD Mandate by the Defendants with respect to the Plaintiff" in the Amended Complaint. *Id*.

### III. Crosby Has Not Shown that There is No Just Reason to Delay Final Judgment on the APA Claims.

Even if the Court had adjudicated an entire claim for the purposes of Rule 54(b), Crosby has not shown that there is no just reason to delay final judgment on the APA claims. Deciding that issue "requires the district court to balance judicial administrative interests and relevant equitable concerns." *Ebrahimi*, 114 F.3d at 165-66. "As these factors will often suggest contrary conclusions, Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by [the] pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" *Id*. (quoting *Morrison-Knudsen*, 655 F.2d at 965). Given that Crosby presents no serious equities in favor of immediate appeal, however, the factors easily balance against Rule 54(b) certification here.

#### A. Crosby Has Not Established that Judicial Administrative Interests Favor Rule 54(b) Certification.

The Court must also consider judicial administrative interests when determining whether there is any just reason for delaying the appeal of the APA claims. Consideration of this "factor is necessary to ensure that [the] application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* at 166 (quoting *Mackey*, 351 U.S. at 438). "The federal concept of sound judicial administration and efficiency will not normally be furthered by 'hav[ing] piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge, who sits alone and is intimately familiar

14

with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case.'" *Id.* at 167 (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)).

In analyzing this factor, the Eleventh Circuit has considered whether it is "more likely that allowing [a] partial appeal would require a greater overall expenditure of judicial resources." *Id.* This includes whether "the same operative facts serve as the basis for each legal theory advanced by [a plaintiff]" and whether there is any similarity in "the relief sought in the dismissed and retained claims[.]" *Id.*[12] Both considerations indicate that a partial appeal would require a greater overall expenditure of judicial resources.

First, many of the same operative facts underlie each legal theory. As the Honorable Judge Marcia Morales Howard explained as part of a claim-splitting analysis, a plaintiff's "causes of action under RFRA and the First Amendment" seeking an exemption from the vaccination directive and an APA challenge to the vaccination directive itself involve the same "operative facts—the decision of the

---

[12] There is overlap between the factors considered here and those considered when determining whether an entire "claim" has been adjudicated for purposes of Rule 54(b) as part of the first step of the two-step Rule 54(b) analysis. *Compare, e.g., In re Se. Banking Corp.*, 69 F.3d at 1547 ("Claims are separable" under the first step "if 'different sorts of relief' are sought") (citation omitted), *and*, *Lloyd Noland Found.*, 483 F.3d at 780 ("[A] partially adjudicated 'claim' cannot serve as the basis for a Rule 54(b) certification; even if a district court has adjudicated one count of a complaint, but another count seeks substantially similar relief[.]") (citation omitted), *with*, *Ebrahimi*, 114 F.3d at 167 (considering "the similarity of the relief sought in the dismissed and retained claims" in determining that "the interests of judicial administration would not be served by allowing immediate appeal"). Although redundant, this overlap is not surprising. After all, "[t]he purpose of Rule 54(b) is to codify the historic practice of 'prohibit[ing] piecemeal disposition of litigation and permitting appeals only from final judgments'" and the Eleventh Circuit has explained that courts "keep in mind the purpose and practical implications of Rule 54(b)" when considering "whether claims are separate[.]" *In re Se. Banking Corp.*, 69 F.3d at 1547-48.

Secretary of Defense to impose the Vaccine Mandate and the [Military Service's] enforcement of the Vaccine Mandate." *See Bongiovanni v. Austin*, No. 3:22-cv-237, 2022 WL 1642158, at *9 (M.D. Fla. May 24, 2022); *see also Tolson v. United States*, 732 F.2d 998, 1001 (D.C. Cir. 1984) ("When alleged 'claims [are] so closely related that they would fall afoul of the rule against splitting claims if brought separately'" "they do not qualify as 'separate' claims within the meaning of Rule 54(b).") (quoting *Amalgamated Meat Cutters*, 642 F.2d at 1071). Each of Crosby's claims "is ultimately premised upon" the same ultimate "contention[,]" *see Ebrahimi*, 114 F.3d at 167; namely, that the Army should retain him as a Soldier subject to deployment even though he does not meet the immunization requirements that make up a part of the military's fitness for duty standards. If the Court certified the dismissed claims under Rule 54(b), the Eleventh Circuit would have to address these same underlying operative background facts at least twice.

Second, as discussed above, *see supra* at 11-13, there is certainly similarity in the relief sought in the dismissed and remaining claims. Success on the relief requested in the Amended Complaint associated with the remaining claims would moot Crosby's interest in the APA claims.

Crosby's arguments to the contrary fail. First, he argues that the claims "are not legally intertwined because the Religious Liberty Claims arise under RFRA and the First Amendment, which have different legal elements, standards of review, and requirements for proof" than the APA claims. ECF No. 69 at 14. Similarly, he contends that there is no risk that certification would require the Court to address the

16

same legal issues twice. ECF No. 69 at 15-16. But the issue is whether the Court of Appeals "would be required to relearn [many of] the same set of facts if and when the case returned to [it] on appeal from the district court's final judgment" on the remaining claims, not whether the legal issues involved in the dismissed and remaining claims are analyzed differently. *See Ebrahimi*, 114 F.3d at 167. Given that the claims all arise from Crosby's noncompliance with the requirements of the military's immunization program, the claims are factually intertwined. *See Bongiovanni*, 2022 WL 1642158, at *9. "[M]ere variations of legal theory do not constitute separate claims" at all. *Amalgamated Meat Cutters*, 642 F.2d at 1071. "Alternative theories of recovery based on the same factual situation are but a single claim, not multiple ones." *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1154 (3d Cir. 1990).

Indeed, the only case that Crosby cites in support of his argument that where some claims require less factual development in the district court than others, those claims should be certified under Rule 54(b), ECF No. 69 at 15, is one in which the district court found that "[f]urther proceedings on [the remaining counts] in [district court] will not moot the need for appellate review of the Court's [order on the dismissed] counts[,]" *Kapila v. Grant Thornton, LLP*, No. 14-61194-Civ, 2018 WL 654466, at *2 (S.D. Fla. Jan. 31, 2018). As explained above, that key element is not present here given the prospective relief Crosby seeks.

### B. Crosby Has Not Established that the Relevant Equities Favor Rule 54(b) Certification.

Equitable considerations do not justify Rule 54(b) certification. Factors considered in weighing equities in this area include whether the party seeking Rule 54(b) certification has established that the case is "exceptional" or "that there would be any unusual hardship in requiring [him] to await the disposition of the entire case before obtaining appellate review." *See Ebrahimi*, 114 F.3d at 168.

Crosby argues that this case is exceptional because Justice Kavanaugh's concurring opinion in *Austin v. U.S. Navy SEALs 1-26*, 142 S. Ct. 1301 (2022) is "wrong." *See* ECF No. 69 at 17. But he cites no case for the proposition that a Rule 54(b) certification is justified by his desire to vindicate a view that a Supreme Court Justice's opinion is incorrect. And even if he could, Rule 54(b) certification would remain unjustified here because Justice Kavanaugh's persuasive opinion addressed RFRA claims—one of Crosby's claims that remain in this case—not one of the claims that have been dismissed.

Crosby contends that awaiting a final disposition on all his claims may take time and that if he is eventually "successful on appeal" on the dismissed APA claims "after perhaps 12-18 months, on remand this Court and the Plaintiff will essentially have to start over at the beginning." ECF No. 69 at 13-14. But that is purely speculative and, if anything, the timing and efficiency considerations cut the other way. It is possible if not more likely that this Court will complete consideration of dispositive motions addressing the remaining claims before an appeal on the APA claims is complete,

potentially resulting in a second overlapping appeal on the same underlying policy that could obviate any need for the first appeal. Moreover, "[t]o entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might* expedite a particular appellant's case would defoliate Rule 54(b)'s protective copse." *Spiegel*, 843 F.2d at 46. "This would leave the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expenses." *Id*. Crosby raises no equities that outweigh the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket.

## CONCLUSION

For the foregoing reasons, Crosby's motion for entry of final judgment and Rule 54(b) certification should be denied.

Dated: August 30, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*

19